UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **CENTURYTEL OF CHATHAM, LLC, ET AL.** | **CIVIL ACTION NO. 09-1951** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **SPRINT COMMUNICATIONS COMPANY LP** | **MAG. JUDGE MARK HORNSBY** |

RULING

Pending before the Court is an *Ex Parte* Motion to Vacate Stay [Doc. No. 38] filed by CenturyLink Plaintiffs (collectively, "CenturyLink"). For the following reasons, CenturyLink's motion is GRANTED IN PART and DENIED IN PART.

**I.   FACTS AND PROCEDURAL HISTORY**

On November 23, 2009, CenturyLink filed suit alleging that Defendant Sprint Communications Company LP ("Sprint") owed more than $6.4 million in access charges required by federal and state telecommunication access tariffs as compensation for delivering traffic to CenturyLink. The Complaint [Doc. No. 1] alleges that Sprint routinely paid the rates contained in the access tariffs until August 2009. At that point, Sprint lodged a series of disputes and refused to pay the rates contained in the access tariffs for traffic that was originated using Voice-over-Internet-Protocol technology ("VoIP"). Additionally, Sprint asserted disputes on a retroactive basis back to 2007 and withheld payment for undisputed services as a means of recovering what Sprint viewed as an over payment. CenturyLink's Complaint asserts four counts: Count I, "Violation of Federal Access Tariffs;" Count II, "Violation of Section 251(g) of the Communications Act;" Count III, "Violation of Section 201 of the Communications Act;" and Count IV, "Violation of State Access

Tariffs." [Doc. No. 1, pp. 16-19].  It was undisputed that the federal claims fell under the Court's federal question jurisdiction and the state law claims fell within the Court's supplemental jurisdiction.

On January 13, 2010, Sprint moved to dismiss Count II and to refer the remaining three counts to the Federal Communications Commission ("FCC"). [Doc. No. 11]. On January 25, 2011, the Court adopted Magistrate Judge Mark Hornsby's Report and Recommendation [Doc. No. 28] dismissing Count II, referring the remaining counts to the FCC, and staying the case. [Doc. No. 37]. The Court instructed that "[a]fter one year from the date of this Court's Ruling, if any party is not satisfied that the FCC has made substantial progress toward deciding the matter, the party may file a motion to vacate the stay with this Court." [Doc. No. 37].

On November 18, 2011, the FCC released an order ("the Comprehensive Reform Order"). CenturyLink alleges that it includes "two lengthy sections that are directly relevant to the issues raised by CenturyLink's Complaint:" (1) Comprehensive Intercarrier Compensation Reform, and (2) Intercarrier Compensation for VoIP Traffic. [Doc. No. 38-1, p. 3]. The Comprehensive Reform Order defines VoIP-Public Switched Telephone Network ("PSTN") as "traffic exchanged over PSTN facilities that originates and/or terminates in VoIP format." REPORT AND ORDER AND FURTHER NOTICE OF PROPOSED RULEMAKING (adopted Oct. 27, 2011, released Nov. 18, 2011), FCC 11-161, ¶ 940 available at http://hraunfoss.fcc.gov/edocs_public/attachmatch/FCC-11-161A1.pdf [hereinafter FCC]. CenturyLink avers that this is "the *exact same* traffic at issue in this case." [Doc. No. 38-1, p. 3] (emphasis in original).  The Comprehensive Reform Order prospectively adopts default compensation rates for VoIP-PSTN traffic "equal to interstate access rates applicable to non-VoIP traffic." *FCC* at ¶ 944.  CenturyLink concludes that "the Comprehensive Reform Order

2

resolves the disputes between the parties prospectively and effectively demolishes the two Sprint arguments that are –or were– the linchpin of Sprint's defense." [Doc. No. 38-1, p. 4]. Accordingly, CenturyLink argues that "Sprint can no longer argue that VoIP-originated traffic should be treated any differently than non-VoIP-originated traffic for purposes of intercarrier compensation. Sprint's argument that state and federal tariffs cannot apply to VoIP-originated traffic is also no longer viable." *Id*. Notably, Sprint does not contest CenturyLink's understanding of the Comprehensive Reform Order.

On April 5, 2012, over fourteen months after the Court stayed the case, Sprint filed a Petition for Declaratory Ruling with the FCC as to Counts I, III, and IV. [Doc. No. 41-2]. In its response, CenturyLink argues that the FCC lacks "the jurisdiction to resolve claims arising under state access tariffs." [Doc. No. 38-1, p.5]. The Petition is currently pending.

On March 14, 2014, CenturyLink filed the instant *Ex Parte* Motion to Vacate Stay [Doc. No. 38] requesting that the Court vacate the stay for the sole and limited purpose of allowing CenturyLink to file a Notice of Dismissal Without Prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). CenturyLink seeks to dismiss without prejudice those claims that assert violations of state access tariffs as set forth in Count IV of the Complaint so that CenturyLink can pursue them in the appropriate state forums. CenturyLink is content to have the stay remain in place with respect to the claims asserted in Counts I and III of the Complaint. Also, CenturyLink does not move the Court to withdraw its referral to the FCC of those claims. Sprint filed an opposition [Doc. No. 41], and CenturyLink filed a reply [Doc. No. 44].

**II.** **LAW AND ANALYSIS**

CenturyLink observes that more than a year has passed since the Court's Judgment, and two

3

years have passed since Sprint filed its petition with the FCC. Also, during the stay, the FCC has made prospective rulings that resolve the issue going forward, but the FCC ruling does not provide retroactive relief or address state access tariffs applied to VoIP originated traffic going back to August 2007. CenturyLink argues that "the Comprehensive Reform Order does nothing to determine whether CenturyLink's filed state access tariffs applied to VoIP-originated traffic going back to August 2007" because it only applies prospectively. [Doc. No. 38-1, p.4]. CenturyLink avers that it is extremely unlikely that the FCC will render an advisory opinion to resolve issues under state access tariffs for the period prior to the adoption of the Comprehensive Reform Order. Accordingly, CenturyLink moves the Court to vacate the stay for its state law claims contained in Count IV, so that it may dismiss those claims and pursue remedies in a state forum.

Sprint does not dispute that the Comprehensive Reform Order addresses the issues prospectively and that it is unlikely that the FCC will render such an opinion. Instead, Sprint argues that CenturyLink's motion should be denied for three reasons: "(1) CenturyLink's purported voluntary dismissal is improper under Rule 41, (2) the FCC has been asked to provide guidance on the Count IV claims and should be allowed to do so, and (3) Sprint would be substantially prejudiced if CenturyLink were to split its claims and force Sprint to defend multiple overlapping state actions." [Doc. No. 41, p.2].

     A.    **The FCC has Been Asked to Provide Guidance on the Count IV Claims and Should be Allowed to do so**

Sprint avers that "the reason for the stay –to allow the FCC to address federal telecommunications issues– exists as to Count IV just as [it] does ... to Counts I and III." *Id*. at p.6.

First, Sprint observes that CenturyLink's state law claims are already before the FCC and

4

were briefed by industry commenters. Sprint argues that "there is no sense in lifting the stay so that [Count IV] can be split off and addressed by multiple state bodies." *Id*. at p.7. CenturyLink points out that, although the FCC has not addressed Sprint's Petition, the FCC's Comprehensive Reform Order specifically resolves the issues surrounding Count IV –whether VoIP-originated traffic can be subject to intrastate tariffs– prospectively. Furthermore, the FCC **expressly declined** to make any retroactive changes. CenturyLink argues that "Sprint is essentially seeking a second bite at the apple" "by asking the FCC to determine that CenturyLink's state access tariffs do not apply to VoIP-originated traffic going back to August 2007." [Doc. No. 44, p.4].

The mere fact that the claims are before the FCC does not dissuade the Court from vacating the stay. Sprint does not argue that the FCC will likely resolve the issues. If one follows Sprint's logic, the stay should remain, even if the claim sits forever unresolved on the FCC's docket.

Second, Sprint argues that the Supreme Court has recognized that the issues in Count IV –whether VoIP traffic is exclusively federal and preempts state tariffs– is an open issue of federal law that must be addressed by a federal forum instead of a state forum. Sprint relies on the recent Supreme Court decision in *Sprint Communications, Inc. v. Jacobs* for the proposition that Count IV raises questions of federal law that should be resolved by a federal court. 134 S. Ct. 584 (2013). According to Sprint, the Court held "that the district court should have exercised its jurisdiction and resolved the issues of federal law raised by Sprint." [Doc. No. 41, p.8]. Like the present case, Sprint declares that *Jacobs* "arose out of a case in which a state public utilities commission decided that intrastate access charges applied to VoIP traffic." *Id*. Additionally, Sprint points to a footnote where the Court acknowledges that the FCC has not resolved the issue. Thus, Sprint argues that it properly raised preemption issues in a federal forum, and it would be inappropriate to pull that issue back

5

from the FCC so that CenturyLink can press its claims in a state forum.

*Jacobs* is more distinguishable than Sprint suggests. There, the plaintiff sought to pursue its claims in federal court while the same claims were pending in a state forum. The district court abstained pursuant to the *Younger* doctrine. The Court overturned the abstention because the elements of the *Younger* doctrine were not satisfied, not because the issue must be brought in a federal forum or that it cannot be removed from a federal forum. Here, CenturyLink, the plaintiff, is trying to vacate the stay, so that it may eventually dismiss the state claims in order to pursue them in a state forum. CenturyLink correctly asserts that the Court in *Jacobs* "never held that VoIP-originated traffic was subject only to interstate traffic" or that "state courts lacked jurisdiction to resolve the very federal law question that Sprint raises here." [Doc. No. 44, p.5].

More than three years have passed since the stay was issued, and, although two years have passed since Sprint petitioned the FCC, the FCC has not issued a ruling. Furthermore, the FCC's Comprehensive Reform Order prospectively addresses Count IV, but fails to resolve the issue retrospectively. The FCC declines the view that "all VoIP-PSTN traffic must be subject exclusively to federal regulations." *FCC* at ¶ 934. Instead it finds that prospectively "tariffing of charges for toll VoIP-PSTN traffic can occur through both federal and state tariffs." *Id.* Accordingly, vacating the stay for the limited purpose of allowing CenturyLink to pursue dismissal of the claims in Count IV is appropriate.

**B.     CenturyLink's Purported Voluntary Dismissal is Improper Under Rule 41**

The Court agrees with Sprint's argument that CenturyLink cannot dismiss one, but not all, of its claims against Sprint via Rule 41(a)(1)(A)(i). The Rule states that "the plaintiff may dismiss an action without a court order by filing: a notice of dismissal before the opposing party serves either

an answer or a motion for summary judgment." FED. R. CIV. P. 41(a)(1)(A)(i). The Fifth Circuit has held that "[w]hen Rule 41(a) refers to Dismissal of an 'action,' there is no reason to suppose that the term is intended to include the separate claims which make up an action." *Exxon Corp. v. Maryland Cas. Co.*, 599 F.2d 659, 662 (5th Cir. 1979); *Bailey v. Shell W. E&P, Inc.*, 609 F.3d 710, 720 (5th Cir. 2010) ("Rule 41(a) dismissal only applies to the dismissal of an entire action –not particular claims."). Additionally, CenturyLink admits in its Reply that "an amended pleading filed pursuant to FRCP Rule 15" is the proper method for a party to dismiss some, but not all claims. [Doc. No. 44, p. 3].

In the motion, CenturyLink seeks permission from the Court to file a Notice of Dismissal Without Prejudice, pursuant to Rule 41(a)(1)(A)(i). Conversely, in its Reply, CenturyLink acknowledges that "CenturyLink will need to seek leave of Court to amend its Complaint to dismiss its claims raised in Count IV" pursuant to Rule 15. [Doc. No. 44, p. 3 n.2]. Accordingly, CenturyLink is denied permission from the Court to file a Rule 41(a) notice of dismissal. If CenturyLink wishes to amend its Complaint, it must file a motion pursuant to Rule 15(a).

### C. Dismissal of Count IV will Cause Substantial Prejudice to Sprint

Sprint argues that it will be substantially prejudiced by the dismissal of Count IV. CenturyLink urges the Court to "decline Sprint's invitation to rule on any FRCP Rule 15 motion before it has even been filed." [Doc. No. 44, p. 3]. The scope of this ruling is limited to partially vacating the stay and a denying CenturyLink leave to dismiss under Rule 41. The Court declines to consider a Rule 15 motion before it is filed and properly before the Court.

### III. CONCLUSION

For the foregoing reasons, CenturyLink's *Ex Parte* Motion to Vacate Stay [Doc. No. 38] is

7

GRANTED IN PART and DENIED IN PART. The motion is GRANTED to the extent that the stay is lifted, but for the limited purpose of allowing CenturyLink to file a motion pursuant to Rule 15(a). The motion is otherwise DENIED.

If CenturyLink wishes to amend its complaint, it must file a motion pursuant to Rule 15(a) by May 26, 2014.

MONROE, LOUISIANA, this 5th day of May, 2014.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE